EDWIN FAIRFAX NAULTY, Respondent, *v.* GORHAM MANUFACTURING COMPANY, Appellant.

First Department, April 5, 1917.

Principal and agent — action for commissions for procuring orders for goods to be manufactured and installed by defendant — pleading — variance — evidence — amendment of complaint — appeal — when question sought to be raised not insisted upon at trial.

In an action to recover for commissions on contracts for bronze work to be manufactured and installed by the defendant, the plaintiff alleged a verbal agreement by which he was to receive commissions on all orders procured by him, and this allegation was supported by his testimony. He was also permitted, without objection, to give evidence as to a special contract by which he was to be compensated for the procuring of orders in a specified territory, even though he was not the procuring cause, and no motion was made to amend the complaint to entitle him to recover on such a theory until the close of the entire case, but counsel for the defendant when entering upon the defense stated that defendant was prepared to meet the cause of action alleged and would object to testimony tending to support a cause of action on any other theory, and moved to strike out the evidence as to the special contract on the ground that it constituted a radical variance from the complaint. The court ruled that if the specific objection had been taken on the motion to dismiss at the close of the plaintiff's case, an amendment of the complaint would have been allowed, and that it would not constitute such a substantial variance as to defeat the action. At the close of the evidence the defendant renewed its motion for a dismissal, whereupon the plaintiff was allowed to amend by alleging, among other things, that the agreement was that he was not only to receive commissions on orders procured by him, but also on orders to the procurement of which he contributed in services, whether or not his services were the procuring cause.

*Held,* that the order granting the amendment should be reversed;

That, under the circumstances, the complaint should not be dismissed, but a new trial should be granted and an opportunity afforded the plaintiff to apply at Special Term for an appropriate amendment,

Since the plaintiff was only entitled to receive commissions on contracts
 for bronze work manufactured by the defendant, it was error to allow
 commissions on the gross amount of a contract including fixtures manu-
 factured by another.

It was error for the court to exclude evidence offered by the defendant to
 show not only that the plaintiff was not the procuring cause of a cer-
 tain contract, but that it obtained the same through the efforts of others
 in no manner contributed to by the services of the plaintiff.

The verdict of the jury awarding commissions on certain specified contracts
 was against the weight of the evidence.

Although the defendant objected that the action was prematurely brought
 in so far as it related to commissions on a certain contract claimed not
 to have been formally executed until after the commencement of the
 action, such question is not before the court on appeal, since no further
 question was raised with respect to the matter, either by a motion to
 strike out or a request to charge, and since the plaintiff's right to
 recover on said contract was submitted to the jury without objection or
 exception and without reference to the fact as to whether or not the
 commissions were earned prior to the commencement of the action.

APPEAL by the defendant, Gorham Manufacturing Company,
from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of New
York on the 21st day of January, 1916, as amended by an order
entered in said clerk's office on the 27th day of January, 1916.
The judgment was rendered upon the verdict of a jury.
Defendant further appeals from an order entered in said clerk's
office on the 14th day of January, 1916, denying defendant's
motion for a new trial made upon the minutes.

*Robert C. Beatty,* for the appellant.

*George Gordon Battle [Addison A. Van Tine* with him on
the brief], for the respondent.

LAUGHLIN, J.:

The recovery was for commissions to which the plaintiff
claimed to be entitled by virtue of a parol contract with respect
to orders for bronze work to be manufactured and installed
by the defendant.

The plaintiff was the president and general manager of the
Fairfax United States Mail Chute System, which was a corpo-
ration.   In the month of January, 1910, negotiations were

opened between that company and the appellant for the manufacture of bronze mail chutes, and a formal agreement in writing therefor was prepared under date of February 11, 1910, which the evidence, however, tends to show was not executed until the latter part of May. The terms of the contract contemplated the obtaining of orders for bronze mail chutes by the Fairfax United States Mail Chute System, to be manufactured by defendant, and that the defendant should make certain advances for expenses, and an advance for fifty dollars per week for a specified period as an advance drawing account for a salesman, which advances were to be deducted from any amount to which the Fairfax System should become entitled under the contract. It was also provided that a selling commission of ten per cent should be allowed a salesman, and that the net profits, after deducting commissions paid the salesman, were to be divided equally between the two companies. The salesman to be employed was not designated, bt it appears that it was understood that plaintiff was to be the salesman, and he was so employed. He obtained no orders, however, and earned no commissions, but defendant advanced to him the sum of $1,170.95.

The plaintiff alleged that in the month of May, 1910, it was verbally agreed between him and the defendant that he should remain and continue in its employ for selling its bronze goods, other than those specified in said contract, for an indefinite period, "upon precisely the same basis as to compensation as that set forth" in said agreement in writing; and he alleges that the effect of the agreement was that he was to receive ten per cent on all contracts obtained and goods sold for the defendant; and that his commissions were to become due upon the acceptance "of the proposed tender, estimate or bids of the defendants" by the party to whom the same might be made. He alleges that pursuant to the *verbal* employment he procured orders aggregating the sum of $251,950, which the defendant accepted and filled, and that he thereby became entitled to receive as commissions the sum of $25,195, from which he concedes there should be deducted the amount of advances to him under the contract in writing and the sum of $7,076.05 advanced to him under the verbal contract; and he

demands judgment in the first count of the complaint for the balance of $16,949.

The complaint contained a second count for the fraudulent diversion of orders to deprive the plaintiff of commissions thereon; but after introducing some evidence tending to support that count the plaintiff withdrew it.

The answer is in effect a general denial with a counterclaim for moneys advanced in excess of certain commissions at the rate of five per cent conceded to have been earned by the plaintiff. The counterclaim was abandoned on the trial.

The plaintiff claimed commissions on eight contracts. The verdict shows that the jury disallowed his claim as to one and allowed a recovery on the other seven. The plaintiff claimed to be entitled to recover a commission of ten per cent on all of the contracts. The defendant conceded that he was entitled to commissions at the rate of five per cent on three of the contracts; but denied that he was entitled to commissions on the others. The jury allowed a recovery of ten per cent commissions on six of the contracts and five per cent on a contract for $152,825, for bronze work on the Scottish Rite Temple at Washington. The plaintiff gave evidence tending to show that he rendered some services in endeavoring to obtain the Scottish Rite Temple contract, but he wholly failed to show that he procured or that his efforts secured that contract for the defendant. Two of the other contracts on which the plaintiff recovered commissions were for the bronze work on the East Boston Savings Bank and the Brockton National Bank. In the negotiations by which the defendant secured those contracts the plaintiff took no part. The commission recovered on the Scottish Rite Temple contract is more than the amount of the verdict. It follows that if the plaintiff was not entitled to recover that commission the judgment cannot be sustained.

At the close of the plaintiff's case counsel for the defendant moved for a dismissal on the grounds: (1) That the plaintiff had failed to prove facts sufficient to constitute a cause of action; (2) that there was no proof that the plaintiff was the procuring cause in securing the contracts for defendant; (3) that he had not sustained the burden of showing that he was the procuring cause with respect to the Scottish Rite Temple

contract; and (4) that there was no evidence that he had anything to do with securing either the Brockton National Bank or the East Boston Savings Bank contracts or of any agreement for commissions with respect thereto. The court, in denying the motion stated that the plaintiff had testified to a special contract by which he was to be compensated even though he was not the procuring cause.

The testimony to which the court referred was given by the plaintiff. It is to the effect that he negotiated a contract for the bronze work on the Springfield National Bank through one James, a Boston architect, and that Fullerton, the manager of defendant's bronze department, subsequently agreed with him that he should have a commission of ten per cent on any business that might come to the defendant through James' office. The two contracts, with respect to which he took no part in the negotiations, subsequently came to the defendant through James' office. The plaintiff further testified that in the spring of 1910 Fullerton agreed that he should have Boston and all of New England, Washington, Philadelphia and Baltimore as his exclusive territory, and that his understanding was that he was to enter the territory first and do the introductory work with respect to negotiating contracts, and that he was to receive ten per cent on jobs in his exclusive territory which he solicited or which were assigned to him and on which he did " some work," and that his point of view regarding exclusive territory was that he " was the only man soliciting business for the Gorham Company within that territory and that under an arrangement with Mr. Fullerton we divided up, it did not matter whether he closed the contract or I closed the contract, so long as I work upon some part of the job; if you please, so long as that had been assigned to me, either I had taken the assignment or it had been given to me to work up, that that business belonged to me and no one else. If I had gone into James's office and had taken up some business there with him, that business would be referred to me, and if it flowed — rather, if the drawing were in and I was not there at that time, it would still be my business. That is as clear an understanding as I can give of my idea of what I meant by exclusive territory." The plaintiff had first testified to a verbal

agreement between him and Fullerton by which he was to receive commissions on orders *procured* by him, which was according to the allegations of the complaint, and in this he was corroborated by his son.   His testimony tending to show a different contract later is uncorroborated.   It was received without objection, but no motion to amend the complaint to entitle plaintiff to recover commissions without showing that he was the *procuring cause* was made until the close of the entire case.   For the most part that evidence was competent. on the issue tendered by the complaint, under which the plaintiff was at liberty to offer any evidence tending to show the services he rendered; but in part, perhaps, it was not competent on that issue.

After the defendant entered upon its defense and when its counsel was offering certain exhibits in evidence a discussion arose between the court and counsel with respect to the materiality of the evidence, and counsel for the defendant stated that the cause of action alleged in the complaint was materially different from that proved, whereupon counsel for the plaintiff said that he intended to make a motion at the end of the case to conform the pleadings to the proof.   Counsel for the defendant thereupon stated that defendant came prepared to meet the cause of action alleged, which was for commissions on orders *procured* by the plaintiff, and that he would object to testimony tending to support a cause of action on any other theory, and he moved to strike it out on the ground that it constituted a radical variance from the complaint.   The court announced that if that specific objection had been taken on the motion to dismiss an amendment of the complaint would have been allowed, and ruled that it would not constitute such a substantial variance as would defeat the action.   At the close of the evidence the defendant renewed its motion for a dismissal, whereupon the plaintiff moved to amend and was allowed to amend by alleging that the agreement was that plaintiff was not only to receive ten per cent commissions on orders procured by him, but also on orders " to the procurement of which the plaintiff contributed any services whether or not his services were the procuring cause of the defendant's having received said orders; " and that he was to receive such commissions

First Department, April, 1917.                    [Vol. 178.

on all bronze goods furnished on contracts where James was the architect, and on all orders received for bronze goods coming to the defendant from Boston or the New England States, or Washington or Philadelphia or Baltimore "providing the plaintiff had rendered any substantial services in connection with the business of procuring said last-mentioned order." It is perfectly clear that by the amendment the plaintiff was allowed to plead new causes of action upon which he has recovered, and the recovery on which was essential to entitle him to a verdict. After the court manifested an intention to allow an amendment of the complaint plaintiff showed on cross-examination of Fullerton that the agreement between him and the plaintiff was that the plaintiff should do the work assigned to him and should receive commissions for services rendered in negotiating a contract made by the defendant where "he did any substantial work on the job;" but Fullerton denied that there was any agreement to pay the plaintiff ten per cent commission on any work, and testified that the arrangement was that the commission was not to exceed five per cent in any event, and that the amount of the commissions in each instance was to be determined by him. It is contended by the learned counsel for the respondent that in view of this admission by Fullerton with respect to the terms of the contract the defendant could not have been taken by surprise in allowing a recovery for commissions on contracts where the plaintiff was not the procuring cause, but rendered substantial services. It may well be that there was no surprise, but orderly procedure requires that a party, unless he clearly waives his right, is entitled to have the issues which he is called upon to meet presented by the pleadings, and ordinarily they can thus be better understood by a jury. Although some of the evidence received before the complaint was amended was subject to the objection that it was not within the issues, still by the motion made to dismiss the complaint and to strike out the evidence, it is quite evident that there was no intention on the part of the defendant to waive its right to have the issues framed by appropriate pleadings and to object to the enlargement thereof by adding additional causes of action at the trial. The plaintiff and his counsel should

have known before the case was brought to trial what cause of action his testimony would tend to establish, and there was no excuse for bringing the issues to trial in the expectation that other causes of action might be shown by the plaintiff's testimony, and that at the close of the evidence the complaint could be amended to conform it to the evidence. The ruling of the trial court, therefore, in allowing the amendment is reversed, and the amendment is disallowed; but in the circumstances we shall not dismiss the complaint for we think the plaintiff should be afforded an opportunity of applying at Special Term for an appropriate amendment, if so advised. This erroneous ruling alone is sufficient to require a reversal, but we deem it proper to express our opinion on some other points which have been argued at length and may arise if there shall be a new trial.

According to the original and amended complaint the plaintiff was only to receive commissions on contracts for bronze work manufactured by the defendant. The Scottish Rite Temple contract was a subcontract for the interior and exterior bronze work, and it included lighting fixtures not manufactured by the defendant, and which it let to another contractor for $30,000. The plaintiff has recovered a commission on the gross amount of the contract, including the lighting fixtures. This was manifestly erroneous, for that item was embraced in defendant's contract as incidental to the work of its own manufacture and owing to the fact that bids were called for embracing both items.

The court also erred in excluding evidence offered by the defendant to show not only that the plaintiff was not the procuring cause of the Scottish Rite Temple contract, but that it obtained the contract through the efforts of others in no manner contributed to by the services of the plaintiff. With respect to that contract the plaintiff claimed to have interviewed representatives of the Scottish Rite order who had charge of letting the contract for the temple with a view to inducing them to favor Gorham bronze, and to have had an interview with Mr. Pope, the architect, and with Mr. Will, his representative, who was in charge of this matter; but he did not even know Mr. Will's name, and the latter testified that the plaintiff

never had communicated with or interviewed him concerning the bronze work, nor had any of those with whom the plaintiff claimed to have conducted negotiations in the matter. Mr. Will also testified that in the preliminary draft of the formal contract for letting the entire work, which was prepared by him, it was provided that Tiffany bronze only should be used. This was subsequently changed and a provision substituted authorizing either Gorham or Tiffany bronze, and the defendant, therefore, bid on the work and obtained the contract. The defendant attempted to show by the testimony of Mr. Will and by the testimony of Mr. Denholm, who represented Norcross Brothers Company, the general contractors, that the change was made solely at the instance of Denholm, who was a particular friend of Mr. Fullerton, and had promised the latter that if Norcross Brothers Company obtained the contract he would endeavor to have the bronze work let to the defendant. This evidence was objected to as immaterial and excluded. It is to be borne in mind that on the plaintiff's own theory and under the complaint as amended he was only entitled to recover a commission if his services substantially contributed to the procurement of an order. Without this evidence the jury may well have found that the contract was obtained by the defendant through the services of the plaintiff; but if this evidence had been received and the jury had accepted the testimony of Will it would have appeared that whatever efforts the plaintiff made with respect to obtaining this contract for the defendant were without avail and in no manner contributed to its obtaining the contract.

We are also of opinion that in so far as the jury found and awarded a commission of ten per cent on any of the contracts, and in so far as they found and awarded commissions on the East Boston Savings Bank and the Brockton National Bank contracts and on the Scottish Rite Temple contract, the verdict is clearly against the weight of the evidence. As already observed the first verbal contract as testified to by the plaintiff and corroborated by his son was limited to orders *procured* by the plaintiff. It is, we think, probable that if there had been a contract by which he was to receive commissions on work coming through the office of the architect James, without

regard to whether he took any part in procuring the contract; and there had been a contract by which he became entitled to commissions for any work done in exclusive territory, and for any work with respect to which he was not the procuring cause of the contract, but rendered services instrumental to some extent in bringing about the contract, he would have stated it to his attorneys in such manner that prior to the case being brought to trial, the pleading, if not originally framed to cover a right to recover on those grounds, would have been broadened. His claim that it was agreed that he would receive ten per cent is likewise improbable. The fact that that was the commission agreed to be paid to him under the contract between his company and the defendant with respect to the contracts for bronze mail chutes does not aid him. That was a new enterprise in which his company was embarking, and into which the defendant apparently had not yet ventured. It is evident, however, that the defendant was well known for its bronze work as it had executed many important public and private contracts. Fullerton denied that there was any agreement to pay the plaintiff a ten per cent commission; and evidence was adduced on the part of the defendant, which was uncontroverted, to the effect that the usual rate of commission to a salesman for procuring contracts for architectural bronze was from two and one-half per cent to three and one-half per cent, and that five per cent and expenses was the maximum, and that ten per cent was unheard of except for small and non-competitive jobs. Moreover, it is not probable that the defendant would enter into an agreement with plaintiff for an indefinite period to give him such an extensive exclusive territory as that to which he testified, embracing the principal cities of the East, all of which is denied by Fullerton, or to give him a ten per cent commission on all business coming to the defendant through the office of the architect, James, or to give him a ten per cent commission on all contracts with respect to which he rendered *any* substantial services, when that was, as the witnesses say, an unheard-of commission even for *fully negotiating* such contracts. With respect to one of the interviews at which the plaintiff claims that a ten per cent commission was promised by Fullerton, one Cun-

First Department, April, 1917.          [Vol. 178.

ningham, who so far as appears, was disinterested, corrobo-
rated Fullerton to the effect that there was nothing said about
a commission of ten per cent. Furthermore, it appears by
uncontroverted evidence that at times when, if the plaintiff
was entitled to a commission of ten per cent the defendant was
indebted to him in a considerable amount in excess of the
advances made, he was asking for advances in excess of the
regular amount and without making any requests for or claim
that there were commissions owing to him; and that in similar
circumstances at one time, when he was indebted to the
defendant for a ring, he, by letter, in effect requested further
indulgence, without making any claim that the defendant
was indebted to him. The testimony of Fullerton with respect
to the compensation which the plaintiff was to receive is not
very convincing, for if the agreement is as he testified, and he
and the plaintiff were unable to agree with respect to the
amount to be paid as commissions on each contract, the plain-
tiff would be relegated to an action for the value of his serv-
ices; but notwithstanding this, the evidence to which reference
has been made, we think, preponderates against the plaintiff's
claim that there was an agreement for commissions at the rate
of ten per cent.

It is urged in behalf of the appellant that the action in any
event was prematurely brought in so far as it relates to com-
missions on the Scottish Rite Temple contract. The formal
written contract for that work was not executed until the 7th
day of April, 1914. The action was commenced on the 2d of
December, 1913. Of course, if the plaintiff should be entitled
to recover anything for services in procuring that contract it
would be incumbent upon him to show that the amount was
earned and became due and payable prior to the commence-
ment of the action. The defendant's bid, upon which, with
some revisions, the work was finally let to it, was presented
upwards of a month before the commencement of the action.
The point sought to be raised by the appellant in this regard is
not present for decision. The plaintiff testified that he was
informed by Holbrook, defendant's president, and Fullerton,
prior to the commencement of the action, in substance that the
defendant had obtained the contract and that the matter had

been "closed." When the plaintiff offered the Scottish Rite Temple contract in evidence counsel for the defendant moved to strike out all evidence relating thereto on the ground that it was incumbent on the plaintiff to show the acceptance before the commencement of the action in order to recover commissions. The court denied the motion on the ground that notwithstanding the fact that the final contract was not made until after the commencement of the action, the jury would have a right to find on the testimony of the plaintiff, to which reference has been made, that the commissions had been earned prior to the commencement of the action. On the part of the defendant evidence was given tending to show that the minds of the parties had not fully met with respect to the contract until about the date of the final written contract; but no further question was raised with respect to the matter either by a motion to strike out or a request to charge, and the plaintiff's right to recover commissions on this contract was submitted to the jury without objection or exception, without reference to the fact as to whether or not the commissions were earned prior to the commencement of the action. Therefore, the point is not now presented for decision. We do not deem it necessary to consider the other points argued.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, SMITH and DAVIS, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.